IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEMETRIA HARRISON,

   Plaintiff,     No. 2:11-cv-2283 EFB

 vs.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

   Defendant.    <u>ORDER</u>
_____/

  Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

////

////

---

[1] Michael J. Astrue, the previously named defendant, has been replaced by Carolyn W. Colvin, the current acting Commissioner of Social Security. Under Rule 25(d), Fed. R. Civ. P., Carolyn W. Colvin is automatically substituted as defendant in this action.

1

I. <u>BACKGROUND</u>

Plaintiff applied for a period of disability, DIB and SSI on May 20, 2008, alleging that she had been disabled since March 15, 2008. Administrative Record ("AR") 129–133, 134-37. Plaintiff's applications were initially denied on August 7, 2008, and upon reconsideration on March 3, 2009. *Id.* at 69-73, 75-81. On May 4, 2010, a hearing was held before administrative law judge ("ALJ") Sara A. Gillis. *Id*. at 31-61. Plaintiff was represented by counsel at the hearing, at which she and an impartial vocational expert testified. *Id.*

On June 25, 2010, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(I), 223(d), and 1614(a)(3)(A) of the Act.[2] *Id.* at 17-26. The ALJ made the

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since May 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: bilateral congenital flatfoot pes planovalgus deformity, bilateral status post triple arthrodesis with neuropathy, left great toe degenerative osteoarthritis, left hip degenerative joint disease (DJD), lumbar disc protrusion, obesity and history of left shoulder impingement status post surgery (20 CFR 404.1520(c) and 416.920(c)).
>
> ...
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> ...
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except walk less than one hour, and stand less than one hour but she can sit unrestricted during a workday. She can occasionally push/pull with the left upper extremity but must totally avoid climbing ladders/ropes/scaffolds. She can occasionally climb ramps and stairs and occasionally crawl/crouch/kneel/stoop. She must avoid overhead reaching with the left upper extremity, and use cane for ambulation.
>
> ...
>
> 6. The claimant is capable of performing past relevant work as an office assistant. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> ...
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 19-25.

On August 15, 2010, plaintiff requested that the Appeals Council review the ALJ's decision. *Id.* at 12. However, on June 24, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. *Id.* at 1-3.

3

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.   ANALYSIS

Plaintiff argues that the ALJ erred by (1) determining plaintiff's mental disorders were not severe impairments at step two and based on that determination disregarded plaintiff's mental disorders at subsequent steps, (2) failing to develop the record regarding plaintiff's mental disorders; and (3) discounting plaintiff's credibility. Pl.'s Mot. for Summ. J., Dckt. No. 18 at 2.

A.   Mental Impairments

The ALJ found at step two that plaintiff did not have any severe mental impairments. AR 19. Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing

to properly evaluate the severity of her mental impairments. Dckt. No. 18 at 9-12. Plaintiff contends that based on this "fundamental[ly] flaw[ed]" determination, the ALJ then erred at step three when the ALJ determined plaintiff's impairments did not meet or equal a listed impairment, at step four when the ALJ determined plaintiff's RFC, and at step five when the ALJ considered the impact of plaintiff's mental disorders on her ability to perform prior work or other jobs. *Id*. at 9-17.

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. *Yuckert*, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

At the second step plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir 2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). An ALJ's finding that a claimant is not disabled at step two will be upheld where "there are no medical signs or laboratory findings to substantiate the existence of medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1005.

////

Pursuant to the analytical procedure prescribed by the regulations, after the ALJ determines that the claimant has a medically determinable mental impairment, he then rates the degree of the claimant's functional limitations in four areas, known as the "B Criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §1520a(b)-(c); *see also* Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. In the first three areas, the ALJ rates the limitations as either none, mild, moderate, marked, or extreme. The fourth functional area, episodes of decompensation, is rated on a four point scale of none, one or two, three, and four or more. 20 C.F.R. 404.1520a(c)(3) and (4)). If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone [i]s sufficiently severe." *Smolen*, 80 F.3d at 1290; 20 C.F.R. § 404.1523.

The ALJ followed this analytical procedure in this case and determined that plaintiff's mental impairments were not severe, specifically finding that plaintiff had only mild restrictions in the first three functional areas, and none in the fourth. AR 20. Substantial evidence supports the ALJ's conclusions. First, with regard to daily activities, plaintiff completed a function report questionnaire in which she noted that she was able to shop, take care of her children, pay bills, count change, handle a savings account, and use a checkbook. *Id.* at 168-71. She also stated that she did "not need help in personal care, hygiene, or upkeep of a home." *Id.* at 135. Next, with regard to social functioning, the ALJ noted a lack of evidence in treating records regarding the inability to socially function. *Id.* at 20. Moreover, as part of the same questionnaire referenced above, plaintiff noted she could participate in her children's activities, *id.* at 169, and plaintiff testified that she visited family, *id.* at 45. With respect to maintaining concentration, as the Commissioner correctly notes, plaintiff reported that she did not like to spend time with others, talked to herself, heard noises, and hallucinated. AR 173-14. She stated these impairments

6

affected her memory and ability to get along with others, *id*. at 173, but *not* her ability to complete tasks, concentrate, understand, or follow instructions. *Id.* The ALJ also found that there was no evidence of decompensation.

More importantly, however, the ALJ also determined at step two that plaintiff's mental impairments were not severe based on an absence of medical evidence showing that plaintiff's mental impairments lasted more than 12 months. AR 20. To establish disability, the claimant's impairments, unless expected to result in death, must have lasted or be expected to last for a continuous period of at least 12 months. *See* 20 C.F.R. §§ 404.1509, 416.909; *see also Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002). In finding that plaintiff's mental impairments did not satisfy the durational requirement, the ALJ properly relied upon the uncontroverted opinion of plaintiff's treating physician, Dr. Caparas. On April 2, 2010, Dr. Caparas completed a mental health assessment in which she stated she had been treating plaintiff since July 23, 2009. *Id*. at 549. She diagnosed plaintiff with major recurrent depression with severe psychosis. *Id*. However, Dr. Caparas opined that plaintiff's mental impairments would render her disabled for only 1-3 months, treatment was expected to last only 3-6 months, and that plaintiff would be able to return to work in May 2010, approximately 1 month later. *Id*. at 550.

Plaintiff contends, however, that the ALJ misinterpreted Dr. Caparas' assessment. According to plaintiff, Dr. Caparas opined that plaintiff "would require 3-6 months of treatment upon stabilization and remission and would still be disabled for about 1-3 months of that extended post-stabilization treatment period." Dckt. No. 18 at 9. Plaintiff appears to be the one who misinterprets Dr. Caparas' assessment. The form completed by Dr. Caparas asked, among other things, what was the expected length of disability, with the following possible answers: 1-3 months, 3-6 months, 6-9 months, 9-12 months, and permanently. *Id*. Dr. Caparas checked the box for 1-3 months and stated that plaintiff's tentative date for returning to work was the

////

////

beginning of May 2010. *Id*. This evidence supports the ALJ's determination that plaintiff did not have mental impairments significantly affecting her ability to work.[3]

Furthermore, the ALJ observed that the record as a whole failed to show that plaintiff had severe mental impairments:

> No mental problems were perceived when [plaintiff] filed her application (Exhibit 1E). Treating records set forth below did not contain mental clinical findings to support a severe mental impairment or evidence that she required any psychiatric hospitalizations. There is no evidence of any crisis center contacts, treatment at county mental health or treatment by mental health specialists, and treating records did not contain evidence that she was considered limited in her ability to perform mental work activities.

AR 20.

Indeed, as plaintiff observes, Dr. Caparas' mental health assessment is the only assessment in the record addressing plaintiff's mental impairments. As previously discussed, that assessment failed to show that plaintiff's mental impairments lasted more than 12 months. Accordingly, the court finds that the ALJ's determination that there is no evidence that plaintiff had a mental impairment lasting for 12 months is supported by substantial evidence in the record.

Furthermore, the evidence of record supports the finding that plaintiff's mental impairments could be fully treated with medication. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (finding that impairments that can be controlled effectively with medication are not disabling). Dr. Caparas opined that plaintiff would only need 3-6 months of medication management and that plaintiff would be able to return to work in one

---

[3] Plaintiff further argues that Dr. Caparas' treatment notes establish that her mental impairments began in late 2008 and persisted at least until April 4, 2010, the date of Dr. Caparas' mental health assessment. Dckt. No. 18 at 10. In discussing plaintiff's history of mental disorders, Dr. Caparas noted that plaintiff's symptoms had worsened since the end of 2008. AR 540. Dr. Caparas, however, did not start treating plaintiff until July 23, 2009. *Id*. at 549. Thus, the note was not based on Dr. Caparas' observations, but rather likely derived from plaintiff's reports. Plaintiff is required to establish the existence of his impairments with medical signs and laboratory findings, not by her own perception or description of his symptoms. *See Ukolov*, 420 F.3d at 1004-05.

month. AR 550. This provides additional support for the ALJ's finding that plaintiff's mental impairments were not severe.

Plaintiff also argues that the ALJ committed reversible error by disregarding plaintiff's "severe" mental impairments at steps three, four, and five. Dckt. No. 18 at 14-17. As discussed above, the evidence relied upon by the ALJ supports the finding that plaintiff's impairments were treatable and did not persist for 12 months, and therefore were not disabling. *See* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."); *see also Barnhart v. Walton*, 535 U.S. 212, 218-222 (2002) (holding that to establish disability a claimant is required to shows that he or she has an impairment that results in an inability to engage in substantial gainful activity for not less than 12 months.); *Warre*, 439 F.3d at 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for disability benefits.). Accordingly, the ALJ finding's concerning plaintiff's mental impairments are supported by the record.[4]

B.  The ALJ Was Not Required to Further Developed the Record

Plaintiff next argues that there was insufficient evidence in the record to support the ALJ's determination regarding plaintiff's mental impairments and therefore the ALJ had a duty to further develop the record. Dckt. No. 18 at 13. In Social Security cases, the claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n. 5. However, an ALJ has a duty "to fully and fairly develop the record and to assure the

---

[4] In plaintiff's reply brief, she argues for the first time that the ALJ failed to adequately consider and discuss her *physical* impairments and limitations as part of the RFC assessment, including but not limited to failing to determine how many hours she could sit, stand, walk, and lift in an eight (8) hour day or to discuss her problems with mood control in responding to supervisors and co-workers. Dckt. No. 22 at 7. A moving party's attempt to introduce new facts or different legal arguments in reply papers is improper. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 894–895 (1990) (court has discretion to disregard late-filed factual matters). Accordingly, as this argument was not properly raised in plaintiff's motion and since the Commissioner has not had an opportunity to address the argument, the court declines to address it.

claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001). "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Here, the ALJ appropriately relied upon plaintiff's treating physician's report, which was neither ambiguous nor inadequate. As mentioned, Dr. Caparas concluded that, although plaintiff had been diagnosed with major, recurrent depression and severe psychosis, plaintiff's condition was expected to last for less than a year and she only required three to six months of treatment. AR 550. This opinion sufficiently supports the ALJ's decision that plaintiff's mental impairments did not render her disabled. Accordingly, since the record was not ambiguous or inadequate, and the ALJ's decision was supported by the opinion of plaintiff's treating physician, the ALJ did not have a duty to further develop the record.

C. Substantial Evidence Supports the ALJ's Credibility Finding

Plaintiff argues that the ALJ erred in finding that she was not completely credible. Dckt. No. 18 at 18. Under Ninth Circuit law, an ALJ must engage in a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted). The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the

10

> impairment can reasonably produce the degree of symptom alleged." *Id.*; *see also Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). To support a lack of credibility finding, the ALJ must "point to specific facts in the record which demonstrate that [the claimant is in less pain or the claimant's symptoms are less severe] than she claims." *Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008).

Here, the ALJ provided several reasons for finding plaintiff's symptoms were less severe than she claimed. First, the ALJ found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints.

> Her complaints are further eroded as Kaiser chart notes document July 18, 2008 she was doing fine following status post rotator cuff tear surgery and Dr. Kauffman August 2008 indicated that he was concerned about her lack of motivation, and explained to her that she needed to work more diligently on her shoulder exercises, and that everything looked fine in her shoulder.
> ...
> These complaints are further undercut by the records from Mercy Medical Group which indicated June 29, 2007 her doctor could not correlate the subjective complaints with the objective findings and he had his concerns as to why she continued to remain so symptomatic following a fall that failed to cause any specific serious injuries. August 28, 2008 under anesthesia she had full range of motion and no instability of the left shoulder. June 22, 2007 x-rays of her left ankle, left hip, and left shoulder revealed no acute bony injury, and right ankle x-rays were negative for acute bony injury. August 2007 she walked with a normal gait, and was released back to full work duty.

*Id.* at 24, 25 (internal citations omitted).

Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light v. Soc. Sec. Admin.*, 119 F.3d 789,

11

792 (1997), it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, the inconsistency between objective findings and subjective complaints was just one factor considered by the ALJ.

The ALJ also noted an overall lack of medical treatment (or conservative treatment) with respect to her alleged pain.

> Finally, her pain/physical complaints cannot be credited as alleged by the claimant as there is no evidence of any recent foot surgery or shoulder surgery. She has not sought chiropractic care or acupuncture for her alleged pain and treating records did not document that she appeared to lose concentration due to her pain.

*Id.* at 25. (internal citations omitted).

The conservative nature of plaintiff's treatment provides a clear and convincing reason for rejecting plaintiff's statements concerning the severity of her impairments. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

Plaintiff does not specifically challenge any of the reasons articulated by the ALJ. Rather, she simply relies on her conclusory opinion that the ALJ "failed to present clear and convincing evidence to disregard [plaintiff's] subjective symptoms."[5]  Dckt. No. 18 at 18. Since the ALJ provided clear and convincing reasons for finding that plaintiff's statements concerning the severity of her limitations were not credible, the ALJ's finding will not be disturbed.

IV. CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

---

[5] Plaintiff's argument regarding the ALJ's credibility determination consists of a summary of the relevant law followed by plaintiff's conclusion that the ALJ did not provide the requisite clear and convincing reasons. *See* Dckt. No. 18 at 17-18. Plaintiff makes absolutely no attempt to explain why the reasons provided were inadequate.

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 29, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13